The next case for argument is Leytman v. United States Department of Homeland Security. Thank you. Just a second. We're going to let the courtroom clear out so we can pay attention to you, Mr. Leytman. Give you our full attention, I should say. Good morning. Good morning, Mr. Leytman. Yes, good morning. I'm Edward Leytman, as you know already. There are two main issues here. First was the action, the wrongful act on the part of transportation security officer was intentional. And the second issue was he is a law enforcement officer. Okay, first issue, whether his act was intentional or not. It's possible. It's absolutely possible. But whether it was certainty, that's absolutely not. Okay, first, initially, you know, I understand, you know, the incident took place when I was leaving for vacation from JFK airport at security checkpoint. I've been previously harassed many times because of TSA. But those harassments happened in foreign airports mostly. And I didn't present my passport. I thought my identity was unknown. And I was relaxed. I didn't look for anything. I wasn't listening anything. And I didn't see anything what I later learned from the footage. Okay, and one time I thought that the incident that took place was an isolated one. And the person who harmed me was a sick man. That's what I really thought. And he just had some urge he has no control of. That's what I thought. And I actually expressed that belief to the manager who investigated the case. So, but they deny anything that I'm doing. That's interesting to point out because both judge and counsel state that it was an intentional act. That's a very interesting position which contradicts the facts. It's a contradiction within the agency, within the government actually. So the second thing was the person is a law enforcement officer. Okay, that's a question to you. That's what I want to ask you. Do you really believe that growing search he conducted on me is just an administrative search? I don't think they're doing it in good faith. Okay, they don't want this case. Well, actually on both of your points, you represented yourself before the district court, did you not? Yes, of course. Well, not necessarily of course.  I just want to make sure. Go ahead. And when were you aware that the argument was going to be made that the TSA official was a law enforcement officer? I'm sorry, I didn't understand the question. The argument was made before Judge Kuntz, the district court judge, that, as I think I understand the record, the TSA officer was a law enforcement official, so that was another reason that you were not going to be successful in your case. Right? No, I think he's a law enforcement officer. I believe that the person who conducted the growing search and who act on that — Well, I should say an agent. I'm sorry? He is an agent. He is an? Transportation security officer. That's how they call it. All right. Or scanner. TSO, transportation security officer. Yes, I call him agent, yes, because I didn't know the right terminology. That's correct. Okay. So I referred to him as an agent, correct, in my papers. I didn't know the law. I just thought I was harmed and the government should protect the citizens. That was my position. That's what I naively thought, but that's not how it happened, and judge acts as extension of government, essentially. He is a defender of defender. You got to see the second case, which he dismissed in sympathy, where he, in order to do that, he rewrote the law. Is it believable, by the way, that Harvard-educated doctor of law doesn't know what the statute says? They dismiss also on technicality, incorrectly. I looked at only while working on appeal. Okay. By the way, Pellegrino case is also against transportation security administration. Nobody tried to dismiss this case on the technicality because it was filed correctly. I had the right to file, and I provided all the arguments for that. Okay. And judge is biased for reason that has nothing to do with subject matter. It's very unfortunate, but that's the situation. Okay. So your red light is on, which means your time to argue is finished, except that you have another minute after Ms. Olds, who is representing the government, argues to us. I want to assure you we have read your papers in this case. So we're fully aware of that, of course. And we're going to hear from the government at this point, and then you'll have a chance to respond. Good morning, Your Honor. My name is Dara Olds. I'm an assistant United States attorney in the Eastern District of New York, appearing today on behalf of the United States. We ask this Court to affirm the district court's ruling that there is no subject matter jurisdiction over Mr. Laitman's claim concerning his preflight screening at John F. Kennedy Airport. Specifically, TSA screeners do not fall within the law enforcement proviso of the Federal Tort Claims Act. I guess the Third Circuit doesn't agree with you, right? That's correct. As evidenced by the recent decision in Pellegrino, the Third Circuit does not agree. However, the Third Circuit's decision doesn't take into account the context of the law enforcement proviso. And that context is indicated in a few ways. First, the proviso applies only to a precise group of people, investigative or law enforcement officers. And those limitations reflect Congress's judgment that the proviso shouldn't apply to every Federal employee who screens or who conducts a search, but only to a precise group. Well, that's for sure. But law enforcement officer is defined, right? That's correct. It's defined as those empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law. So there's no dispute, I think, that a TSA person can't make arrests or seize evidence. But the issue is whether they get to do searches, whether what they do at the airport is executing a search. And the Third Circuit, at least the majority, thought that it was, right? That's true. And why is that wrong? That's wrong because, for a few reasons. First of all, those three, authority exercised in those three ways, execute searches, seize evidence, and make arrests for violations of law, inform each other and provide a context that indicates that the proviso applies to those who, to search for and responding to violations of Federal law, which is not what TSA screeners do. TSA screeners conduct administrative searches preventing violations of law. They are there, in effect, to keep certain prohibited items from getting past a certain point. That's very different than the broad powers or police functions that's indicated by those three things. And further, the proviso includes the words, empowered by law, as Your Honor mentioned, which means that we have to look at the statute that empowers TSA screeners and look at what it is they are empowered to do. And as I mentioned, they are empowered to screen. And Section 114P of that statute does actually give TSA the authority to designate certain employees as law enforcement officers, and they have done that. And the responsibilities, there's a stark difference in the responsibilities between people who have been so designated and TSA screeners. People who have been so designated carry firearms. They respond to violations of law. They investigate. It's very different responsibilities than TSA screeners have. And in fact, in the course of their administrative search, if TSA screeners come upon evidence of a violation of law, they are required to call those who have been so designated by TSA, because those are the people who actually investigate and determine whether there has been a violation of law or not. And that phrase, empowered by law, is important as shown by this Court's decision in Wilson. It's not just a question of whether what they do is searches, but is it a search within the meaning of the law enforcement proviso? And in the context of the words within the proviso, it is not, we submit. What attention did the district court pay to this particular issue? I mean, did it? The district court did look at what it is exactly TSA screeners are empowered to do. And that's why the court cited to this Court's decision in Wilson, which, as I mentioned, looks at whether seize means, just because they are empowered to seize, whether that's the same as being empowered to seize within the meaning of the law enforcement proviso. And so the district court did look at that. And further by that issue, meaning whether they are law enforcement officers. The way the case is teed up down there and the way it's teed up in front of us, I mean, I would like the government's view on that. I'm not asking you to pronounce finally on it. Obviously, we've got to figure that out. Well, there is certainly intentional conduct that's pled here. I know that Plaintiff is making the argument that it may have not been intentional, but the facts as alleged in the complaint do indicate intentional conduct. And so the government, I think the answer is yes, Your Honor. I mean, the government is immune to the extent that this is intentional conduct that's committed by someone who is an employee rather than a law enforcement officer. Okay. Thank you. Thank you very much, Ms. Olds. Mr. Lightman. Thanks for the tip to the counsel, because she was talking about designated law enforcement officer. It appears according to the footage there was a designated law enforcement officer who instructed the transportation security officer to conduct the search. You've got to see it to believe it. The footage is just the body language of the person who conducted the search. He was stunned. Initially, he turned his head. They cut sound on purpose. They pretended they don't have sound. In the modern U.S. airport, there is no cameras with sound. It's unbelievable. So he turned his head. He listened for instructions. He turned his torso after that. He was stunned. He pointed his finger, his palm back to make sure the person who is talking to him, who is the designated, who is his supervisor, who is talking to him, he's talking about me, okay? And that person, after he started the search, that person walked under the camera, okay? And he formed one line with me and the officer who conducted the search, protecting himself. It's so sickening. It's just unbelievable. He was protecting himself from possible explosion according to what I saw that they had sickening information, sickening intention that I'm hiding in my groin some explosive. That's what it looked like. Would you believe it? He moved his head behind his back. He moved his head to see better how he conducted search. It lasted only a few seconds, okay? He started the search by squeezing my scrotum, okay? It lasted only fractions of a second, okay? But I still suffer from that pain. All right. So we understand. We have your argument. Thank you. Thank you for being here to present it. Thank you both. We will reserve decision in this case.